UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:13-cv-24125-GAYLES/Turnoff

**VEOLIA TRANSPORTATION**
**SERVICES, INC.**,

    Plaintiff/Counter-Defendant,

v.

**UNITED TRANSPORTATION UNION**,

    Defendant/Counter-Claimant.
_____/

## ORDER

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment [ECF Nos. 37 & 38]. Plaintiff Veolia Transportation Services, Inc. ("Veolia"), initiated this lawsuit on November 13, 2013, by filing a complaint to vacate the Federal Mediation and Conciliation Service ("FMCS") Arbitration Award No. 13-54528-3 ("Arbitration Award") of Arbitrator Phillip E. Ray ("Arbitrator"). [ECF No. 1]. United Transportation Union ("UTU") counterclaimed for enforcement of the Arbitration Award. [ECF No. 9]. The arbitration was conducted pursuant to a collective bargaining agreement between Veolia and UTU and the submission of the parties to the Arbitrator. The Arbitration Award ordered the reinstatement of Grievant Richard Beall ("Beall") subject to a six-month suspension to run concurrent with his Federal Railroad Administration suspension. [ECF No. 1-1 at 13]. This Court previously remanded the issue to the Arbitrator for proceedings relating to the issue of Beall's CSX Transportation disqualification and administratively closed the case. [ECF No. 47]. The Arbitrator issued new findings and conclusions on June 20, 2015 ("Award on Remand"). [ECF

No. 48-1]. Pursuant to the Notice to Reopen [ECF No. 28] filed by UTU, this Court reopened the case. A Status Conference was held on October 28, 2015, at which time the parties addressed the June 2015 Award on Remand, in which the Arbitrator concluded that "Claimant shall be returned to service immediately and paid for all time lost and benefits, consistent with my original Award." [ECF No. 48-1 at 12]. Pending before the Court are UTU's Motion for Summary Judgment [ECF No. 37] and Veolia's Motion for Summary Judgment [ECF No. 38]. Additionally, Veolia filed a Motion to Supplement the Record [ECF No. 52] on October 30, 2015,[1] to which UTU responded with a Motion to Strike [ECF No. 53] on November 9, 2015. Veolia filed a Motion to Vacate Arbitration Award or, in the Alternative, for Additional Briefing [ECF No. 58] on January 14, 2016. For the reasons stated below, the Court grant's UTU's Motion for Summary Judgment, grants Veolia's Motion to Supplement the Record, denies Veolia's Motion for Summary Judgment, denies UTU's Motion to Strike,[2] and denies Veolia's Motion to Vacate Arbitration Award.

## BACKGROUND

Grievant Richard Beall was a Locomotive Engineer on a commuter train operated by Veolia on the South Florida Regional Transportation Authority's Tri-Rail Commuter Rail System ("Tri-Rail"). [ECF No. 1 at ¶ 6]. At the time, Tri-Rail operated on tracks owned and dispatched by CSX Transportation ("CSX"). [*Id.* at ¶ 9]. CSX had the authority to determine whether Veolia's employees were prohibited from performing services on CSX-controlled tracks for violation of CSX operating rules. [*Id.* at ¶ 10].

---

[1] The additional documents include various letters and correspondence regarding Beall's status on the South Florida Rail Corridor, particularly with respect to his disqualification by CSX Transportation. *See* [ECF No. 52-1].

[2] The Motion to Strike is denied as procedurally improper. Motions to strike pursuant to Federal Rule 12(f) apply to matters contained in pleadings, and a motion to supplement the record is not a pleading because a pleading under Federal Rule 7(a) only includes a complaint, an answer, a counterclaim, a crossclaim, or a court-ordered reply to an answer. *See Polite v. Dougherty Cty. Sch. Sys.*, 314 F. App'x 180, 184 n.7 (11th Cir. 2008).

2

On September 26, 2012, at approximately 7:32 a.m., Beall violated CSX Operating Rule 44 when operating Tri-Rail Train P615 by exceeding the prescribed speed by greater than ten miles per hour, failing to notify the train dispatcher of a warning sign placed by members of an efficiency test team, and continuing to operate the train at excess speed for approximately 2.5 miles. [ECF No. 38-1 at ¶¶ 15–21]. Due to a series of violations culminating in this incident, Beall was issued a Notice of Formal Investigation, a formal investigation hearing was held, and Veolia notified Beall that he was terminated from service and that his engineer certificate was revoked for six months. [ECF No. 1 at ¶¶ 13–18]. Additionally, CSX determined that Beall's violation of Operating Rule 44 was a major rule violation and prohibited him from further service on CSX-controlled track. [ECF No. 38 at ¶ 21]. Pursuant to the Collective Bargaining Agreement ("CBA") between Veolia and UTU, UTU filed a grievance, and eventually the parties agreed to submit the matter to arbitration. [ECF No. 1 at ¶¶ 8 & 18]. Arbitrator Phillip E. Ray presided over a hearing and subsequently issued his Arbitration Award on October 14, 2013. [*Id.* at ¶¶ 20–21].

Arbitrator Ray's Arbitration Award concluded that Beall had violated CSX Operating Rule 44. [ECF No. 1-1 at 13]. However, the Arbitrator also determined that the disciplinary penalty of termination was not commensurate with the infraction and that Beall should be returned to service and made whole for lost wages and benefits outside a six-month disciplinary suspension. [*Id.*]. Veolia filed this suit on November 13, 2013, seeking to have the Arbitration Award vacated.

This Court remanded the matter to the Arbitrator on October 14, 2014, for further proceedings related to Beall's CSX disqualification. [ECF No. 47]. The Arbitrator affirmed his original decision on June 20, 2015, in the Award on Remand and found that Beall should be

returned to service immediately and paid for lost time and benefits consistent with the original Arbitration Award. [ECF No. 48-1 at 12]. Of note, the Arbitrator concluded that the issue of Beall's reinstatement with CSX was never pressed by Veolia during the arbitration. [*Id.* at 10–11]. Further weighing the evidence, including testimony of three individuals and a Veolia email from October 11, 2012, the Arbitrator determined that a request by Veolia for CSX to reinstate Beall was a reasonable expectation and that such a request became Veolia's obligation upon the issuance of the Arbitration Award. [*Id.* at 9–11].

On March 29, 2015, CSX's authority over the railroad tracks in the South Florida Rail Corridor ("SFRC") ended when its contract with the Florida Department of Transportation expired. [ECF No. 52 at ¶ 3]. Subsequently, the South Florida Regional Transportation Authority ("SFRTA") assumed responsibility for maintenance and train dispatching responsibilities of the SFRC and Tri-Rail. [*Id.* at ¶ 4]. Beall has not been reinstated pending the outcome of this case, and SFRTA maintains that Beall "is still disqualified or barred from service on the SFRC." [ECF No. 52-1 at 1].

Veolia argues in its Complaint that this Court should vacate the Arbitration Award on the basis that it "(a) does not draw its essence from the CBA; (b) is contrary to and disregards the express language and the plain, unambiguous meaning of the CBA; (c) adds to, subtracts from, supplements and/or modifies the express terms of the CBA; (d) is arbitrary and capricious insofar as the Arbitrator exceeded his power to interpret and apply the CBA by imposing on the parties his own brand of industrial justice; (e) is outside the scope of the Arbitrator's authority; and (f) fails to conform, or confine itself, to matters within the scope of the arbitrator's jurisdiction." [ECF No. 1 at ¶ 24]. In its Motion to Vacate Arbitration Award, Veolia further argues that this Court should vacate the Arbitrator's Award on Remand from June 20, 2015, because "it does not

draw its essence from the collective bargaining agreement" and because new circumstances regarding SFRTA's continued disqualification of Beall prevent Veolia from complying with the Arbitration Award. [ECF No. 58 at ¶¶ 4–5].

UTU argues in its Amended Counterclaim that Veolia has failed to comply with the Arbitration Award and that this Court should issue injunctive relief requiring Veolia to fully comply with FMCS Award No. 13-54528-3. [ECF No. 33 at 4]. UTU further responds to Veolia's Motion to Vacate Arbitration Award that both the original Arbitration Award and the Award on Remand are within the Arbitrator's authority under the CBA and that Veolia's argument regarding the changed circumstances of SFRTA should be addressed by arbitration and not this Court at this time. [ECF No. 59 at 1–4].

## THE AGREEMENT

The CBA between Veolia and UTU provides, in relevant part, as follows:

RULE 23 – DISCIPLINE

. . . .

B.  When an employee is alleged to have committed a major offense, the employee may be held out of service pending investigation and decision. A major offense may include, but is not limited to:

. . . .

2.  Extreme negligence.

. . . .

D.  Discipline for just cause, if imposed, depending on the nature of the incident, can range from a written reprimand, to suspension, to dismissal.

. . . .

P.  If the dispute is not settled, the grievance may be appealed to an impartial arbitrator . . . . Decisions of the Arbitrator shall have the authority only to rule on the interpretation and application of this Agreement and shall have no power to either add to or detract from the Agreement.

. . . .

    S.    If at any point in this appeals procedure, or in an arbitration proceeding, it is determined that the discipline imposed should be modified, the employee will be paid for all lost time in excess of such modified discipline.

. . . .

RULE 24 – CLAIM AND GRIEVANCE PROCEDURE

. . . .

    B.    Should any grievance arise, . . . [d]ecisions of the Arbitrator shall have the authority only to rule on the interpretation and application of this Agreement and shall have no power to either add to or detract from the Agreement.

[ECF No. 37-4 at 4–8].

## THE ARBITRATION AWARD

The issues presented before the Arbitrator were as follows: "Did the Carrier [Veolia] properly find Claimant [Beall] in violation of CSX Operating Rule 44 and was Claimant's termination from service proper and in accordance with the Parties' Collective Bargaining Agreement." [ECF No. 1-1 at 4]. The Arbitrator examined all the relevant facts in the record and considered the positions of the parties. [*Id.* at 2]. Ultimately, the Arbitrator concluded that Beall had violated CSX Operating Rule 44 but that the discipline imposed was arbitrary and excessive. [*Id.* at 9]. In reaching his conclusion, the Arbitrator "interpret[ed] and applie[d]" the CBA. [*Id.* at 2]. The Award on Remand reiterated that the original "Award interpreted and applied" the CBA [ECF No. 48-1 at 2]. And the Award on Remand itself "is based on the record" and "interprets and applies" the CBA. [*Id.* at 5].

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

A "genuine" issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

"A district court's disposition of cross-motions for summary judgment employs the same legal standards applied when only one party files a motion." *Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015) (citing *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir.1984)). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 (N.D. Ga. 2014) (citing *Oakley*, 744 F.2d at 1555–56).

## ANALYSIS

The facts are essentially undisputed. The only issue before the Court is whether the Arbitrator exceeded the authority granted to him under the terms of the parties' CBA. [ECF No. 1 at ¶ 24]; [ECF No. 37-1 at 1–2]; [ECF No. 38-2 at 1]. Veolia argues that the Arbitrator exceeded his jurisdiction because the Arbitration Award ignored the unambiguous language of the CBA resulting in the issuance of an Arbitration Award that failed to draw its essence from the CBA. *See* [ECF No. 38-2 at 1]. Veolia further argues that the Award on Remand does not draw its essence from the CBA and that changed circumstances regarding Beall's continued disqualification by SFRTA prevent Veolia from complying with the Arbitration Award and the Award on Remand. [ECF No. 58 at ¶¶ 4–5]. UTU argues that the Arbitration Award was proper and that Veolia simply refuses to reinstate Beall. [ECF No. 37-1 at 2]. UTU also argues that Veolia's impossibility argument is properly reserved for arbitration, not this Court. [ECF No. 59 at 4].

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "governs suits to enforce or vacate an arbitration award arising out of a collective bargaining

agreement." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus.& Serv. Workers Int'l Union AFL–CIO–CLC v. Wise Alloys, LLC* (*Wise Alloys I*), 642 F.3d 1344, 1352 (11th Cir. 2011). While the Federal Arbitration Act ("FAA") does not apply to collective bargaining agreements, 9 U.S.C. § 1, "federal courts look to the FAA for guidance when dealing with § 301 arbitration cases." *Id.* at 1353 n.4.

"A federal court's review of an arbitration award is highly deferential and extremely limited." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL–CIO–CLC v. Wise Alloys, LLC* (*Wise Alloys II*), 807 F.3d 1258, 1271 (11th Cir. 2015). Indeed, the Eleventh Circuit has stated that "judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. Am. Multi–Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (citation and internal quotation marks omitted).

The Court's role in this action is not "to review the merits of the arbitrator's interpretation, but only to ask whether it was *arguably* based on the language of the agreement." *IMC–Agrico Co. v. Int'l Chem. Workers Council of United Food & Commercial Workers Union, AFL-CIO*, 171 F.3d 1322, 1326 (11th Cir. 1999) (emphasis added); *see United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); *see also United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. . . . The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that

9

the arbitrator misread the contract."). "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2066 (2013) (citation and internal quotation marks omitted). The Seventh Circuit has deftly articulated the standard:

> As we have said too many times to want to repeat again, the question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive. By making a contract with an arbitration clause the parties agree to be bound by the arbitrators' interpretation of the contract. A party can complain if the arbitrators don't interpret the contract—that is, if they disregard the contract and implement their own notions of what is reasonable or fair. A party can complain if the arbitrators' decision is infected by fraud or other corruption, or if it orders an illegal act. But a party will not be heard to complain merely because the arbitrators' interpretation is a misinterpretation. . . . But once the court is satisfied that they were interpreting the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrators haven't ordered anyone to do an illegal act.

*Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987) (Posner, J.) (citations omitted).

"A court may not vacate an arbitral award unless it is irrational, exceeds the scope of the arbitrator's authority, or fails to draw its essence from the collective bargaining agreement." *IMC–Agrico*, 171 F.3d at 1325 (internal quotation marks and citation omitted); *see also Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1263 (11th Cir. 1996) (stating that

the court's "review of a labor arbitration award 'is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement[,] or whether it exceeds the scope of the arbitrator's authority.'") (quoting *Butterkrust Bakeries v. BCTW Local 361*, 726 F.2d 698, 699 (11th Cir.1984)).

The "award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Wise Alloys II*, 807 F.3d at 1272 (quoting *United Steelworkers*, 363 U.S. at 597). The award "draw[s] its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Wise Alloys I*, 642 F.3d at 1351 (citation and internal quotation marks omitted). "Under this standard, 'as long as the arbitrator is *even arguably construing or applying* the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Wise Alloys II*, 807 F.3d at 1272 (quoting *United Paperworkers*, 484 U.S. at 38) (emphasis added). "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (quoting *United Steelworkers*, 363 U.S. at 597). Because "arbitrators derive their powers from the parties' agreement," the Court must look to the "mutually agreed-upon contractual provisions in an agreement" to determine the arbitrator's powers. *See Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011).

An arbitration award cannot contradict the express language of the CBA, nor may an arbitrator modify clear and unambiguous contract terms. *Wiregrass Metal Trades Council AFL–CIO v. Shaw Envtl. & Infrastructure, Inc.*, — F. 3d —, 2016 WL 4702017, at *3 (11th Cir. Sept.

11

8, 2016). However, an arbitrator can interpret language of the CBA. "To determine whether the arbitrator engaged in interpretation, as opposed to modification, we begin by looking at the relevant language in the collective bargaining agreement and asking, as a threshold matter, whether that language is open to interpretation." *Id.* "A contract may be susceptible to interpretation when it is not facially ambiguous . . . because collective-bargaining agreements may include implied, as well as express, terms, and an arbitrator is empowered to discover those implied terms." *Id.* at *4. (internal citations and quotation marks omitted) (emphasis in original). "When there are two plausible interpretations of an agreement, then the arbitrator's choice of one over the other will be honored." *IMC–Agrico*, 171 F.3d at 1328 (finding that the district court erred in vacating an award in which the arbitrator reasonably interpreted the CBA's provisions in reviewing the appropriateness of the type of discipline imposed).

Rules 23(P) and 24(B) of the CBA here provide that "the grievance may be appealed to an impartial arbitrator" and that the "[d]ecisions of the Arbitrator shall have the authority only to rule on the interpretation and application of this Agreement and shall have no power to either add to or detract from the Agreement." [ECF No. 37-4 at 7–8]. Rule 23(D) contemplates a range of disciplines—none of which is mandated by the CBA: "Discipline for just cause, if imposed, depending on the nature of the incident, *can range* from a written reprimand, to suspension, to dismissal." [*Id.* at 5] (emphasis added). Most importantly, Rule 23(S) expressly provides for the modification of an imposed discipline through the appeals process, including an arbitration proceeding: "If at any point in this appeals procedure, *or in an arbitration proceeding*, it is determined that *the discipline imposed should be modified*, the employee will be paid for all lost time in excess of such modified discipline." [*Id.* at 7] (emphasis added).

The fact that the CBA provides language that is at least open to an interpretation that the arbitrator can modify an employee's discipline through the grievance process is sufficient for this Court to affirm the Arbitration Award and Award on Remand here. *See Fla. Power Corp. v. Int'l Bhd. of Elec. Workers, Sys. Council U-8 Int'l Bhd. of Elec. Workers, Local Union 433*, 847 F.2d 680, 681 (11th Cir. 1988) (affirming arbitrator's decision to reinstate employee where the CBA gave management the right to disciple, suspend, and discharge employees but subjected that decision to adjustment through the grievance procedure bargained for by the parties). *But see Warrior & Gulf Nav. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 996 F.2d 279, 280 (11th Cir. 1993) (finding that the arbitrator had no discretion to reinstate employee where the CBA *expressly* provided that employee was "subject to immediate discharge" for second failure of a drug test).

Veolia's arguments that the Arbitrator exceeded his authority under Rule 23(P) and Rule 24(B) of the CBA by modifying the contract are also unavailing. *See Bruno's, Inc. v. United Food & Commercial Workers Int'l Union, Local 1657*, 858 F.2d 1529, 1532 n.4 (11th Cir. 1988) ("In this Court, 'no modification' clauses are not considered a reliable basis for overturning an arbitrator's interpretation of a collective bargaining agreement."). As the Court has stated, the CBA's language provides for the modification of discipline through an arbitration process. It is not the Court's place to weigh the seriousness of Beall's offense or to reevaluate the merits of the dispute. Because the Arbitrator explained in the Arbitration Award and the Award on Remand that he was interpreting and applying the CBA, and because he did, in fact, interpret and apply the CBA, this Court's review of the matter must conclude there. The Court finds that the Arbitration Award and the Award on Remand indeed draw their essence from the CBA, *see Wise Alloys II*, 807 F.3d at 1272, because the language and context of the CBA show the parties'

intention to allow for an arbitrator's modification of discipline, *see Wise Alloys I*, 642 F.3d at 1351.

In support of its argument for vacatur, Veolia relies heavily on *Contico Int'l, Inc. v. Local 160, Leather Goods, Plastics & Novelty Workers, AFL–CIO*, 738 F. Supp. 1262 (E.D. Mo. 1990), in which the district court held that an arbitrator exceeded his authority.[3] In that case, an employee had been discharged for falling asleep on the job, and the arbitrator reinstated the employee, substituting a 30-day suspension for the discharge. *Id.* at 1266. While the case is superficially similar to the instant action, the analogy fails when comparing the language of the CBAs. In *Contico*, sleeping on the job during work hours resulted in *automatic* termination under the CBA. *Id.* at 1264. Here, Rule 23(D) of the CBA provided for disciplinary actions for "just cause" ranging from a "written reprimand, to suspension, to dismissal"—none of which were automatic. While Rule 23(B)(2) of the CBA does authorize suspension for a major offense, such as extreme negligence, [ECF No. 37-4 at 4], the Arbitration Award never uses the words "extreme negligence," instead referring to the "rules infraction" as "serious" and something that "properly warrants serious discipline." [ECF No. 1-1 at 12]. Additionally, the optional temporary suspension under Rule 23(B)(2) of the CBA here is completely different from the automatic termination under the CBA in *Contico*.

Regarding Veolia's argument that it is impossible for it to comply with the Arbitration Award and the Award on Remand due to Beall's continued disqualification by SFRTA, the Court finds that it need not weigh those issues at this time. First, arguments not raised before the arbitrator are not properly before this Court on a motion to vacate. *See Hill*, 814 F.2d at 1199. And second, the Award on Remand addresses the impossibility argument head-on, discussing

---

[3] Decisions of other circuit and district courts as only persuasive authority and not binding upon this Court. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1211 (11th Cir. 1981).

Veolia's potential options for reinstating Beall's certification and SFRTA's new administration of the Tri-Rail system. [ECF No. 48-1]. The proper route for Veolia to address any further difficulties with respect to reinstating Beall is through arbitration as provided in the CBA.

## CONCLUSION

The Court is mindful "of the law's insistence that arbitration losers who resort to the courts continue to lose in all but the most unusual circumstances, of which this is not one." *See Wiregrass Metal*, 2016 WL 4702017, at *1. The incident leading to the grievance in this case occurred over four years ago on September 26, 2012, and Beall was removed from service on October 1, 2012. This case has now languished for several years through two proceedings before the Arbitrator as well as this instant action in federal court because "[a]s too often happens, instead of accepting it and moving on, the loser moved the district court to set aside the arbitration award." *Id.*; *see also Saturn Telecomms. Servs., Inc. v. Covad Commc'ns Co.*, 560 F. Supp. 2d 1278, 1279 (S.D. Fla. 2008) ("Everyone supposedly loves arbitration. At least until arbitration goes badly."). "The parties in this case bargained for the arbitrator, and not a federal court, to interpret the provisions of their collective bargaining agreement. Since the arbitrator's award was based on a reasonable interpretation of language in the agreement, [the Court] conclude[s] that the arbitrator acted within the scope of his authority and issued an award that drew its essence from the parties' agreement." *See IMC–Agrico*, 171 F.3d at 1328–29. The Court is not here for the parties to relitigate the merits of the grievance but, rather, only must determine whether the Arbitrator acted within the bounds of the CBA in the interpretation contained in the Arbitration Award and the Award on Remand. Because the Court concludes that the Arbitrator did not stray from his authority under the CBA, the Arbitrator's conclusions must be upheld.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that

(1) United Transportation Union's Motion for Summary Judgment **[ECF No. 37]** is **GRANTED**;

(2) Veolia's Motion for Summary Judgment **[ECF No. 38]** is **DENIED**;

(3) Veolia's Motion to Supplement the Record **[ECF No. 52]** is **GRANTED**;

(4) United Transportation Union's Motion to Strike **[ECF No. 53]** is **DENIED**;

(5) Veolia's Motion to Vacate Arbitration Award or, in the Alternative, for Additional Briefing **[ECF No. 58]** is **DENIED**;

(6) Veolia, its officers, and its employees are **ORDERED** to fully comply with FMCS Award No. 13-54528-3; and

(7) This case is **CLOSED** for administrative purposes, and any pending motions are **DENIED as moot**.

(8) Pursuant to Federal Rule of Civil Procedure 58(a), judgment shall be entered for Defendant and against Plaintiff in a separate document.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of September, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Turnoff
All Counsel of Record